# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| HEALTHCARE MANAGEMENT SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-0845 |
| | ) | Judge Sharp |
| SYNTEL LIMITED and SYNTEL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Defendants' fully briefed Motion to Compel Arbitration and Stay Pending Completion of Arbitration (Docket No. 30). For the reasons that follow, the Motion will be granted and this case will be stayed in favor of arbitration.

## I.

Plaintiff Healthcare Management Systems, Inc. ("HMS") sued Defendants Syntel Limited and Syntel, Inc. in the Davidson County Circuit Court for negligent misrepresentation, breach of contract, fraud , and violations of the Tennessee Consumer Protection Act ("TCPA"). On August 16, 2012, the action was removed to this Court and, in lieu of filing an answer, Defendants, on September 24, 2012, filed a Motion to Dismiss (Docket Entry No. 11), arguing that the Complaint failed to allege the necessary elements of fraud and negligent misrepresentation, and that those claims, as well as the TCPA claim, failed to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

At the center of the dispute is a Master Service Agreement and Statement of Work entered

into between the parties. The Master Service Agreement contains a mandatory arbitration clause that provides:

> Any dispute which has not been mutually resolved by the parties in accordance with the informal dispute resolution process set forth above shall be determined and settled according to the Commercial Arbitration Rules of the American Arbitration Association except as expressly set forth herein.

(Docket No. 31 at 1). Under the agreement, "dispute" is defined as "any dispute, controversy, or claim arising out of or related to this Agreement." (Id. at 2).

On December 5, 2012, Defendants filed their Motion to Compel Arbitration and Stay Proceedings based upon the Master Service Agreement. Plaintiff opposes the Motion, arguing that "Syntel jumped headfirst into the waters of litigation in this action and, five (5) months after Plaintiff filed the Complaint, has decided that it does not like the temperature of the water." (Docket No. 41 at 1). More specifically, Plaintiff argues that Defendants waived the arbitration agreement based upon their substantial participation in the litigation, and that this participation supports a conclusion that the parties never intended to submit any allegations of fraudulent inducement to arbitration. Plaintiff also argues that it has suffered prejudice as a result of Defendants' litigating this action, only to later invoke the arbitration provision.

## II.

The Federal Arbitration Act provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3.

A court is required to "'examine[] arbitration language in a contract in light of the strong

federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." Hurley v. Deutsche Bank Trust Co. Americas, 610 F.3d 334, 338 (6th Cir. 2010). This is in keeping with "the central purpose of the Federal Arbitration Act to ensure 'that private agreements to arbitrate are enforced according to their terms.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53-4 (1995) (quoting, Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)).

Whether, as Plaintiff argues, the parties never intended to submit the fraudulent inducement allegations to arbitration, it is clear that the same may, in fact, be arbitrable. In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 306 (1967), the Supreme Court addressed an arbitration clause, similar to that here, in which the parties agreed "to arbitrate any controversy or claim arising out of or relating to this Agreement, or the breach thereof." The Court held: "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id. at 403-4; see, Preston v. Ferrer, 522 U.S. 346, 353 (2008) ("attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken"); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance").

In the Complaint in this case, Plaintiff alleges that "Syntel induced HMS to enter into a business relationship with inducing misrepresentations," (Docket No. 1-1, Complaint ¶¶ 130 & 142); the claim is not that Defendants induced Plaintiff into the arbitration clause. As such, the fraudulent

inducement claim is arbitrable. Moreover, the "any dispute" language in the Master Services Agreement clearly covers Plaintiff's claims for breach of contract, fraud, and the alleged violations of the TPCA. See, Watson Wyatt & Co. v. SBC Holdings, Inc., 513 F.3d 646, 650 (6th Cir. 2008) (citaiton omitted) ("Given the directives of the Supreme Court and this Circuit, the district court [i]s required to give a general presumption of arbitrability and to resolve any doubts in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute'"); Solvay Pharms., Inc. v. Duramed Pharms., Inc., 442 F.3d 471, 482 n.10 (6th Cir. 2006) ("When faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration," and "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators"); Rosenberg v. BlueCross BlueShield of Tennessee, Inc., 219 S.W.3d 892, 911 (Tenn. Ct. App. 2006) ("claims under the Tennessee Consumer Protection Act are subject to arbitration").

Even when claims are clearly subject to arbitration, however, arbitration may be waived by the conduct of a party. The Sixth Circuit "ha[s] explained that 'a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice.' " Johnson Assoc. Corp. v. HL Operating Corp., 680 F.3d 713, 717 (6th Cir. 2012) (citations omitted). "Because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." Highlands Wllmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 573 (6th Cir. 2003).

## III.

Having fully considered the record and the parties' arguments, the Court finds that Defendants did not engage in conduct that was completely inconsistent with their right to arbitrate, nor has Plaintiff shown that it incurred actual prejudice.

With regard to the first issue, complete inconsistency, the Sixth Circuit has "declined to sharply define what conduct suffices," although it typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with the plaintiff's pre-litigation efforts to arbitrate." JPD, Inc. v. Chronicle Holdings, Inc., 539 F.3d 388, 393 (6th Cir. 2008).  Again, "the strong presumption in favor of arbitration" comes into play, and waiver will be found only in cases "with the most compelling fact patterns."  Id.

As Plaintiff correctly points out Defendants removed the case, filed a motion to dismiss the fraud-related claims, engaged in discovery, and filed motions, all before moving to stay and compel arbitration.  None of these things, however, either in isolation or in light of the entire context in which the actions were taken, suggests complete inconsistency with reliance on the agreement to arbitrate.

In Dantz v. American Apple Group, LLC, 123 Fed. Appx. 702, (6th Cir. 2005), the Sixth Circuit held that "mere removal of a case to federal court, and nothing more, does not constitute waiver of a defendant's right to arbitrate," and cited for that proposition Williams v. Cigna Fina. Advisors, 56 F.3d 656, 661 (5th Cir. 1995) and its "holding that a defendant did not waive its arbitration right when it removed an action to federal court, filed a compulsory counterclaim, and engaged in discovery after a motion to stay discovery was denied."  Id. at 707.  Further, "it is well-established that a party does not waive its right to arbitrate merely by filing a motion to

dismiss." Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir.2004); see, Hooper v. Advance America, Cash Advance Centers of Missouri, Inc., 589 F.3d 917, 922 (8th Cir. 2009) ("Not every motion to dismiss is inconsistent with the right to arbitrate"); Khan v. Parsons Global Servs., Ltd., 521 F.3d 421, 427 (D.C. Cir. 2008) (stating "a motion to dismiss may not be inconsistent with the intent to arbitrate, as where a party seeks the dismissal of a frivolous claim"). And, engaging in minimal discovery does not necessarily constitute a waiver of the intent to arbitrate. See, In Re Pharm. Bene. Mgrs Antitrust Litig., 700 F.3d 109, 120 (3rd Cir. 2012) ("Our cases finding waiver have uniformly featured significant discovery activity in the district court"); Patten Grading & Paving, Inc. v. Skanska USA Building, Inc., 380 F.3d 200, 206 (4th Cir. 2004) (no prejudice where, at the time the motion to compel arbitration was filed, "the parties' discovery efforts were confined to the exchange of interrogatories and requests for production of documents; significantly, the parties had not noticed depositions").

In this action, Defendants evidenced their intention to arbitrate early-on, albeit apparently operating under the mistaken assumption that the fraud and misrepresentation allegations needed to be resolved before arbitration. This position is made clear in the Proposed Initial Case Management Order in which Defendants state:

> The agreement between these parties contains an arbitration clause, limitations of liability provisions and other relevant terms. However, by alleging fraud or misrepresentation, HMS is seeking to invalidate the contract and all its provisions. Consequently, the threshold issue in this case is whether any fraud has occurred, so as to strip Syntel of its contractual rights and remedies. Syntel submits that the Initial Case Management Order should be customized to fit the needs of this case and the parties. So, the Court should determine the viability of HMS's fraud claims--and only the fraud claims--so that the parties will know whether the contract, negotiated by sophisticated parties over a number of months is determined to be of no effect, or whether its agreed-upon provisions, including, arbitration, limitations of liability, and other clauses, survive.

(Docket No. 17 at 4-5).

At the initial case management conference, Defendants characterized the case as presenting a "chicken and egg" problem, and requested that the Court and parties "try to determine a way that would be fair, that would be quick, and that would be cost effective to resolve the fraud aspect of this case, yet reserve the right to arbitrate the contractual – the issues here." (Docket No. 25, Transcript at 24-25). For its part, Plaintiff proposed that the parties "engage in some limited discovery that will benefit both the pending motion [to dismiss the fraud claims] and, if we end up in arbitration, the arbitration," and later asserted that "there's some limited discovery that needs to be done, but not full-fledged discovery," and that limited discovery "would benefit both sides in the evaluation of the lawsuit." (Id. at 9 & 11). Plaintiff also opined that with "good lawyers on both sides," the parties would be "able to agree to the scope," but that if someone overstepped the bounds of proper discovery the opponent could seek a protective order. (Id. at 11-12).

Based upon those discussions, Magistrate Judge Bryant stated that he wanted "to preserve, to the extent I'm able to, the benefits of this arbitration provision," and that he did not "want to waste any money," and that he wanted "to preserve the cost savings that the arbitration is usually intended to create." (Id. at 15). Accordingly, he allowed the parties to

> serve one set of interrogatories, limited to 30 interrogatories including subparts, and one request for production of documents on the adverse party. This initial discovery shall, to the extent possible, be limited to those matters that would require discovery if this case were subject to arbitration.

(Docket No. 18 at 1). Magistrate Judge Bryant also indicated that he would conduct another case management conference after the Court's ruling on the Motion to Dismiss.

Given the record, the Court does not agree with Plaintiff that Defendants' have undertaken

"a thinly-veiled attempt to forum shop," or that "Syntel decided to test the waters of this Court and to take advantage of this Court's discovery rules." (Docket No. 41 at 4 & 7). The Motion to Dismiss has not been ruled upon, and only a specific and minimal amount of discovery was allowed.

Moreover, Plaintiff has not established that it was actually prejudiced by Defendants' conduct. "'Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense,'" or it can "be found where a party has gained a strategic advantage by obtaining something in discovery that would be unavailable in arbitration." Johnson, 680 F.3d at 719 (quoting, Kramer v. Hammond, 943 F.2d 176, 179 (2nd Cir. 1991)).

Plaintiff asserts that it has been prejudiced by "the significant costs of litigating this case in this Court for over five months as well as responding to discovery propounded by Syntel." (Docket No. 41 at 10). Plaintiff also contends that it has been prejudiced because the "the discovery that Syntel obtained from HMS may not be available in any arbitration proceeding." (Id. at 11).

The delay of five months is not extraordinary. Compare, Gulf Guar. Life Ins. Co. v. Connecticut Gen'l Life Ins. Co., 304 F.3d 476, 485 (5th Cir. 2002) (citation omitted) ("a party had not waived its right to arbitrate when it waited 'almost eight months before moving that the district court proceedings be stayed pending arbitration, and in the meantime participated in discovery'") with, Hurley v. Deutsche Bank Trust Co., 610 F.3d 334 (6th Cir. 2010) (waiver found where more than two years elapsed between time of filing of the lawsuit and the motion to compel arbitration and defendant "consistently and actively litigated this action in court"); General Star Nat. Ins. Co. v. Administratia Asiguarilor de Stat, 289 F.3d 434 438 (6th Cir. 2002) (waiver occurred where, "for 17

months, [defendant] remained idle while [plaintiff] incurred the costs associated with this action" and defendant "sought arbitration only after the district court had entered a default judgment against it"); In re Pharmacy, 700 F.3d at 118 (delay of 10 months in invoking arbitration "sits at the low end of the cases in which we have found waiver"). Further, while Plaintiff was required to respond to the motion to dismiss and the discovery requests, it has provided no evidence of that expense, or shown that it incurred "significant cost" in litigating this case. See, Citibank, N.A. v. Stok & Associates, P.A., 387 Fed. App'x 921, 925 (11th Cir. 2010) (finding no prejudice where defendant "has done little to demonstrate the amount of expenses incurred as a result of [plaintiff's] conduct" and "could not point to any portion of the record that reveals either the amount of money it spent or the number of hours it dedicated to conducting litigation-specific discovery and preparing litigation-specific documents"); Ryan v. Thunder Restorations, Inc., 2011 WL 264082 at *7 (E.D. La. July 8, 2011) (party claiming waiver has "the burden of showing that they incurred costs and suffered prejudice," and that was not shown where plaintiff has "not provided the Court with any evidence of monetary loss, or of the costs incurred in defending [defendant's] previous litigation conduct").

Plaintiff's costs in responding to discovery could not have been much because, while Defendants propounded interrogatories and requests for production of documents in accordance with Magistrate Judge Bryant's ruling, Plaintiff provided only a nine-page response to the fourteen interrogatories, half of which was used to retype the question and provide boilerplate objections. Additionally, Plaintiff has failed to demonstrate that it was prejudiced by producing the minimal information it did provide, a problem which is compounded by the fact that, as Plaintiff concedes, the arbitration provision in the Master Services Agreement "leaves decisions as to the availability of discovery within the discretion of the arbitrator." (Docket No. 41 at 11).

The facts of this case are substantially different from those presented to the Sixth Circuit in Johnson and that case does not, as Plaintiff claims, "establish[] that Sytnel's acts constitute conduct inconsistent with reliance on the arbitration provision and, thus, establish waiver."  In Johnson, the case was litigated for eight months before defendant raised its right to arbitrate, during which time defendant filed an answer and counterclaim (but failed to raise arbitration as a defense), the parties "actively scheduled and requested discovery, including depositions," the parties were "involved with numerous scheduling motions and court supervised settlement discussion," and the day after defendant filed a motion to compel arbitration, plaintiff served discovery responses "in accordance with the deadline," producing "1,151 pages of responsive documents and . . . a 4.1 gigabye hard drive containing responsive material."  Johnson, 680 F.3d at 716 & 720.  Here, in contrast, the specter of arbitration was raised early-on and the actual motion was made less than four months after the case was removed, discovery was limited to written discovery on the specific issues related to the fraud allegations, plaintiffs' discovery responses were not burdensome, and the court's involvement was minimal.

**IV.**

Based upon the foregoing, the Court will grant Defendants' Motion to Compel Arbitration and Stay Pending Completion of Arbitration

An appropriate Order will be entered.


_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE